Our second case for this morning is Labamoff Enterprises v. Gov. Bruce Rauner. Mr. Tanford. Thank you, Your Honor. May it please the Court. Illinois allows its in-state retailers to ship wine directly to consumers, but prohibits out-of-state retailers from doing so. Mr. Tanford, I'd like to sort of get to the bottom line here. Why isn't this case just about your client's inability as an out-of-state business to get a license to sell liquor in Illinois? Why do you need the shipping provision to attack this law? I don't necessarily, the Privileges and Immunities Clause complaint is specifically addressed to your question about the fact that they are not eligible for a license. They cannot get a license to participate on the same basis as in-state residents. What does it take to be a resident? Suppose they incorporated a subsidiary in Illinois, or they just bought some land and opened, what does it take to be a resident? I don't actually know what it would take to qualify as a resident. That's not clearly defined, but that argument was raised in the original Granholm case because that was the New York scheme. In order to gain the right to ship to New York residents, you had to establish some kind of subsidiary. And the Supreme Court said, no, that's too much of a burden, particularly when you then multiply that out to 50 different states. Is it your argument that if your clients could get a license to sell wine in Illinois, they would agree to buy any wine they were shipping to Illinois residents only from licensed Illinois distributors and wholesalers? Is that your argument? Let me just interrupt. That was exactly the question I was going to ask because it's not clear to me. Even if you were to prevail at the Tier 3 level and obtain the right to ship to Illinois customers, and you've said you're willing to be licensed and pay taxes, in order to fit in, I think at Tier 2 you would have to get all your wine, just as Judge Rovner just said, from Illinois distributors. Well, that's not necessarily the case for two reasons. One is that Illinois itself, its prior law that was repealed in 2007, had a reciprocity licensing arrangement. That is, Illinois itself did not previously require that an out-of-state retailer obtain all of its wine from a licensed Illinois wholesaler. No, I understand, but it does now, and you're not attacking the distribution level point, I thought. Well, the second thing is that what this really is is an argument. It substitutes a second kind of discrimination against interstate commerce for a first kind. That is, and there's no wholesaler involved in this case to determine whether a licensed wholesaler can be a wholesaler with an Illinois license, or has to be a wholesaler physically located in Illinois with a wholesaler license. So are you telling me that you're taking a one-step-at-a-time approach, and if you can prevail with respect to the alleged discriminatory treatment of retailers, you'll see if you can live with that or if you need to bring another lawsuit about the wholesalers? Well, first of all, the first thing that would happen is we'd go back to the State of Illinois, through their legislature or their Liquor Control Commission, to decide how to regulate interstate shipments from retailers, and we don't know the answer to that. The second one is that what a lot of this boils down to is, if there's a finding that the discriminatory ban on retailer shipping violates the Commerce Clause, for example, or the Privileged Immunities Clause, step two is, can they justify the ban? And I would characterize, if the argument is you have to buy all of your wine from a licensed wholesaler in Illinois, then that is a justification for excluding retailers, because, as you point out, as currently written, the out-of-state retailer would probably not be able to purchase most of their wine from an Illinois licensed wholesaler, though I would point out that with consolidation wholesalers, there are now wholesalers like Southern Glazer, which operate in both states. That's what I was going to ask you. It was my understanding that at the wholesale level, there are brokerages and wholesalers in general that appear to be licensed in more than one state. That's correct, Your Honor. There are at least two of them in the United States. It might be possible, then, if you were an Indiana retailer, such as your client, who could somehow get a license to retail in Illinois, maybe you would have to use only those brokers that also had an Illinois license, but maybe they have an Indiana license, too. They might very well. And it is also completely plausible that a wholesaler licensed in Indiana, now facing an avenue to the Illinois market, which is much bigger than Indiana's, would itself apply for a license in Illinois. At the wholesale level, yeah. This is a motion to dismiss, so some of this stuff is factual. Are there any wholesalers, and there are no facts yet, because this is a motion to dismiss. So I don't think it is a bar to the case proceeding, because the standard is, is there no set of facts that would allow a judgment in our favor? And I think that there is, and that would be that the state is unable to justify the exclusion of out-of-state retailers from the market because of the wholesaler licensing requirement. There's nothing in here. Your client is also prohibited from providing liquor at a wedding or a banquet in Illinois, even though someone with an off-premise license in Illinois can do that. In other words, the problem is really that you cannot get an Illinois license, not that you cannot ship to Illinois purchasers, right? I'm back where I was, because I'm just, I'm really trying to figure this out. Well, the statute says, and the Liquor Control Commission says, that it has to do with a ban on shipping. So are you thinking that there are actually a variety of ways that one functions at the retail level? One of them may be shipping, one of them may be in-premises sales, one of them may be off-premises sales, and right at the moment you'd be happy to solve the shipping problem? That is correct. The location of this particular business and the interest of the consumer plaintiff has to do with the Internet ordering and shipping market. This is a new one, and these regulations, a lot of them banning this Internet market, have eliminated the old traditional requirements of, you know, you go to the liquor store, and you show your ID, and you do it face-to-face, and you have to carry it home yourself, and there's a one-case limit. I mean, the old-fashioned system. Well, Granholm does a lot to that. I don't understand you. Oh, sorry. Sorry. I was just going to say, Granholm does a fair amount of damage to that system, because if wineries can ship directly, then you already have to solve the ID problem and the signature problem and these supposed consumer protection measures that the states had used. And Illinois has done that through something called its direct shipper permit, which you have to apply for if you're an out-of-state winery, and then it allows you to do that again. The out-of-state wineries are shipping wine into Illinois, which has never touched the hands of an Illinois wholesaler. So there's no reason to think that that is a critical constitutional element of the case. Well, they did it because they had to, right? They did it after Granholm, right? Right, but the same argument could have been made in Granholm that there were other aspects of the state's regulatory system that had to do with more than just shipping that were implicated. And indeed, post-Granholm, states have gone various ways about whether they impose case limits. It's a Massachusetts and an Arizona case in which they make only some smaller wineries eligible. Some have licenses, some have reciprocity rules, some have no license at all. So the whole point of the 21st Amendment, it seems to me, was to give states the ability to make a lot of these decisions themselves as long as they do not, at some level of the system, engage in discrimination against interstate commerce. If Illinois prohibited local sellers from making Internet or mail order sales, are you... no discrimination here? Your voice cut out in part, so I didn't hear the full question. I'm sorry. If Illinois prohibited local sellers from making Internet or mail order sales, is it your argument that there would be no discrimination here? There certainly would be no facial discrimination. And whether there would be discriminatory effect, there have been two cases that litigated that and the court said no. In fact, they're cited and relied on heavily by the state, the Arnold's Wine case in New York and the Wine Country Gift Baskets case out of Texas, the Fifth Circuit. Both of those were states that, in fact, did just what you suggest. And one of them did it in the middle of the lawsuit, changed its law to take away the statewide shipping and Internet ordering privileges of in-state businesses. And as soon as it did that, the court said, no, there's no longer any discrimination. You're mixing apples and oranges. But in here, Illinois does allow its in-state retailers to take remote orders and engage in common carrier FedEx-type shipping. But yes, I agree. If they took that away, I think the discrimination would go away. That's at least what most of the courts have said. What does the privileges and immunities argument add to your case? I mean, I can follow your argument fine under the Commerce Clause, but it's hard for me to see how privileges and immunities are anything but an add-on. I think if one has two grounds for the same argument, one asserts both grounds. I agree. But the privileges and immunities, I mean, you have to get to the owner for privileges and immunities, and you've got, I don't know. I'm not sure. The owner does separately appear in the complaint and separately ask. Because, I mean, first of all, it is possible, for example, that, and we're talking motion to dismiss, which means is there any avenue that gets to a favorable verdict, I can easily imagine Illinois in response or any state in response to a finding that it cannot continue to discriminate either under Commerce Clause or privileges and immunities, that it would say we don't want, that the issues are separate. That is to say we can make a case that we don't want the big international national retailers coming in and swarming the market because the way we want to structure our market is mom-and-pop shops. There are states, Arizona did that with wineries. Well, they could still do that. You're saying, I understand you to be saying that as long as there's no distinction drawn based on state residence or citizenship, a state can do whatever it wants to. It can say every last bottle of wine purchased in the state of Illinois has to be bought from a bricks-and-mortar retailer. That's right. It's just that Illinois is trying to have it both ways. They're trying to favor the in-state presence and disfavor the out-of-state presence. And as you read Granholm, as I understand it, Granholm says you can't do that. That's correct. Even though Granholm was only at the producer level. Yes, but as your Honor pointed out in the previous argument, an opinion is written in the context of the factual case before it. So the fact that Granholm only talks about products and producers, they never say only products and producers. And, in fact, they say quite explicitly products, producers, and shippers. They did say that at one point. Anyway, the Privileges and Immunities Clause is addressed to the possibility that essentially the state could justify possibly at the next stage, at summary judgment, justify excluding non-resident retailers, the big box stores, but might not be able to justify excluding individuals who want to, for example, as you suggested, run their own, run a second business. Joseph Dost, the plaintiff, owns Lebomoff Enterprises. Lebomoff, yeah. But he already has 15 stores. He can open a new business called Lebomoff, Illinois, himself personally, if allowed to do that. And so an attempt to exclude him as an individual from opening a new business is a separate question from whether his existing business is being harmed or discriminated against in its ability to do interstate commerce. If there are no further questions. Yeah, you can save the rest of your time for rebuttal. Thank you. That's fine. Ms. Hunger. May it please the Court. Assistant Attorney General Sarah Hunger on behalf of the state defendants. This court should affirm the judgment of the district court because the state's regulatory system treats all retailers even-handedly by requiring that they all participate in and comply with the state's three-tiered distribution and importation requirements. But it's very hard for me to see how they're being treated equally when Illinois will not allow a non-resident retailer to perform these functions. It's a very explicit discrimination. It is not explicit. Well, suppose you're in Hammond, Indiana, and you're a retailer and you would like to ship some wine to your customer in Chicago. You could practically walk it over there, and yet you're forbidden from doing so because of this Illinois law. You're forbidden from doing so primarily because, as Levimoff stated in his opening argument, they do not want to receive their alcohol from the in-state distributors. So the distribution chain is the primary. It's precisely the discrimination that we're worried about, and we have to decide how broadly to read Granholm because the state's tried this at the producer level and we're told if you're letting the in-state wineries ship, you've got to let the out-of-state wineries ship. And I would say if you're letting the in-state retailers ship, you should be required, and they've conceded with appropriate licensing and tax payments and all the rest, you should allow the out-of-state retailers to ship. The recipient doesn't know whether the return address says Illinois or whether it says Indiana, or doesn't care at least. I suppose you could look at it. I think first perhaps I can walk the court through Illinois' residency requirements, and that might help shed some light on how the three-tier system exactly works. So at the producer and manufacturer level, all producers and manufacturers or non-resident dealers get a license from Illinois. They then ship to importing distributors or distributors. The alcohol must then actually touch base in the warehouse in Illinois before it is shipped to in-state retailers. The state then can inspect that alcohol, and then after that point the alcohol stays in the state. It's not going back and forth across states, as was addressed in Arnold's Wine and was discussed earlier. It goes from the licensed distributor to the in-state retailer. Now for in-state retailers- But it doesn't if you get a direct shipment from the winery, the little itty-bitty winery in California. You can get a direct shipment from them. That's correct, and as your Honor stated- It's not touching base in any warehouse and going through an expensive series of wholesale. This is pure protectionism, right? This was written into the 21st Amendment because that was the price of repealing prohibition. But the Supreme Court has moved beyond that to say a state can have very strict- A state could be dry. The state of Illinois could say there's not going to be any alcohol sold here at all, and we would not have a case because the 21st Amendment permits Illinois to do that. But that's not the choice Illinois has made. And so as I read Granholm, if a state is going to allow in-state people to do something, it has to allow out-of-state people to do it as well. With respect, that is not how I read Granholm. If you look at Granholm, there are many indications that there's a difference between the producer level and the other levels at issue in the three-tier system. For example, we know that both Granholm and North Dakota stated that it is permissible for a state to require retailers to get all of their alcohol from in-state wholesalers. So right there, right after the producer level, you have an in-state requirement that has been upheld by the Supreme Court. But that issue was not the issue before the court in Granholm. That's correct. And so the question is, if you have a retailer with the equivalent of the, call it an out-of-state retailer license, Illinois could probably come up with something like that, to make sure that they were paying and so forth and that there was perhaps reciprocal health and safety measures. Hard to see why Indiana is permitting its residents to drink polluted wine, whereas Illinois isn't. I mean, it's just absurd. So I just don't see how you can push Granholm into a holding about discrimination in the lower two levels of the three-tier system, as opposed to simply saying there's going to be some form of regulation at each of these tiers. Well, in Granholm as well, a couple of points about Granholm. First, Michigan did have an in-state retailer requirement that the court did specifically note in Granholm and yet said that the three-tier system was unquestionably legitimate and also that a state could mandate that the alcohol would go through that three-tier system. But where did they say it's okay to run the three-tier system, particularly tiers two and three, in a way that discriminates against out-of-state persons? That's the part. I mean, it's one thing to say you have three tiers. It's just another thing to say you can be discriminatory. So we are not arguing that retailers are somehow exempt from claims of discrimination post-Granholm, and I think an example might help here. The way that the Illinois system is currently written, it prohibits all retailers from importing from an out-of-state source or from shipping from an out-of-state source directly to a consumer. And this is a very important regulation for Illinois because it has been a problem to have retailers from out-of-state not only shipping directly to consumers but shipping to other retailers because they have lower taxes in other states. So all retailers are barred from receiving any alcohol from a non-licensed in-state distributor or there are some other beer exceptions as well. But, you know, I mean the tax point is one that could be addressed in the kind of license. You could have an equalization provision in there, and I guess one of the reasons that I get worried about this case, particularly the shipping dimension, is that this is the world at this point. I know people who never step inside a bricks-and-mortar store. They get all their groceries on, you know, Amazon. They go through Whole Foods now at this point. They get their liquor shipped directly. They literally do not walk into stores. So what Illinois is trying to do is put a huge damper on modern commerce. I disagree with that respectfully, but I think that also, you know, going back to my hypothetical earlier, there would be discrimination, for example, if a retailer in Illinois were allowed to import from another retailer. Say you have a nationwide or regional chain, and they were allowed to ship alcohol back and forth. But that's not what this retailer is trying to do. This retailer is just trying to ship directly to the customer, just as the Illinois retailers can right now ship directly to the customer. Yes, and all indications from Granholm and from the courts that have interpreted Granholm, the Second Circuit and the Fifth Circuit, have looked at this question and have said that the three-tier system can require an in-state presence for the wholesaler level and for the distributor level because that's how the three-tier system works. All right, so answer this question for me. How easy would it be or how impossible would it be for Lebemoff just to open up a Chicago store? So it actually would not be very difficult. So in the Liquor Act, if you are a sole proprietor, you need to be a resident of Illinois. If you are not, no one associated... Can corporations be residents of Illinois? The corporation just needs to be registered in Illinois. And then as long as the municipality can essentially bless the liquor license, the state will grant it. So whether or not Lebemoff has... So all Lebemoff has to do is create a subsidiary corporation called Lebemoff, Illinois. Yes. And get that registered and open up a store. All of these are expensive, of course, but, you know... Yes, no one in that enterprise has to become a resident of Illinois. There's no durational residency requirement as there was in Cooper or in the Southern Wine case in the Eighth Circuit. And, you know, in fact, different municipalities have different levels of regulation. Illinois is a dual licensing system. So Lebemoff could find a municipality that doesn't even require a storefront. It could be essentially a warehouse. And that's where, you know, Lebemoff would receive... Be a retailer? Yes. That is up to the municipality. If the municipality will allow it and has that local license, then that satisfies the state's requirements. So it is not an owner's burden. We know of situations where that fact pattern has taken place. Yes, that has occurred. I mean, it's not in the public record, but I know for a fact that that has occurred. So it is not an owner's burden like some of these other states where they require, you know, in the Eighth Circuit for in-state wholesalers, the court upheld, I think it was all of the officers, all of the directors, and a super majority of the shareholders had to be Missouri residents. This is not that type of a case. There just needs to be some in-state presence so that the alcohol, once it comes in the state through a licensed distributor, stays in the state, goes to a retailer, the state can check, you know, can inspect, can look at the books and records throughout that whole process. And also I think... But of course the state could require... Oh, excuse me. What I was going to say, is municipality control in Illinois much different than most states? I don't know the answer to that. I do know that it's a dual licensing state, and some other states have that and some don't. Some, they run it all through the state. And so, you know, in addition to kind of challenging the three-tier system, this is also, in effect, a challenge to the municipal regulations as well. You know, if they were to succeed, not only would you take away the state control, but you would take away the fact that you have a local liquor commission, you have a sheriff, you have a mayor who can also inspect and make sure that... But can they prevent an Illinois licensee from direct shipping? You know, if the city of Elmhurst decides that it doesn't want liquor stores in Elmhurst to direct ship, can they say you can't do it, even though it's okay under Illinois law? I have not seen any examples of that, and I'm not sure. So I don't want to speculate. And also, too, just to give a sense of scope here, right now Illinois has licensed 1,422 wineries under this direct winery shippers license. In Illinois alone, there are 23,000 retail licenses. So you apply that to 50 states. I mean, it is much more alcohol would be coming across the borders than this very small exception that the state did impose in order to comply with Granholm. Well, we don't know that. I mean, that makes some assumptions about elasticities of demand. How much are people in Illinois going to drink? It seems to me that it may involve some shuffling of where the wine comes from, but it's hard for me to believe that there would suddenly be some deluge of wine from outside the state if this were to happen. Maybe there would be price competition, which would be a whole different thing. There would be. There would certainly be different price competition depending upon how Illinois structured its new system. Can wineries in Illinois, say, import virtually unnamed wine and put their own labels on it and sell it? I don't know the answer to that question. I don't know how wineries are regulated in that fashion. But the in-state wineries are treated the same as the out-of-state wineries in terms of being able to ship directly to consumers as they are required to do. That's great. That's the whole thing. Good for them. I'm glad they're doing that. I think the key here, as came up earlier, is that plaintiffs are not wanting to comply with the distribution system. They would like to take the wine that they have gotten from Indiana sources and ship it to Illinois residents. I mean, all throughout the briefing. I think they would concede readily that they don't want to comply with it because they think it violates the Commerce Clause and that they ought to have the right to ship to people in a different state. Right, but that would completely alter the distribution system that the Supreme Court has said is unquestionably legitimate. And I understand that in that case it was at the producer level, but you also cannot ignore all the indications in that decision stating that the three-tier system was unquestionably legitimate and also that states were allowed to set up this type of system. That's been accepted pretty widely throughout the United States. It has been, yes. Most states do have a three-tier or two-tier or four-tier system, so this is the way that taking their direction from the Supreme Court, this is the way that the states have set up their licenses and their licensing scheme. I'd also like to point out that the Second Circuit and the Fifth Circuit did address nearly identical laws. The Second Circuit case did not have a local requirement, as counsel stated. All that it stated is that you're not shipping it through common carriers. You need to have a licensed vehicle shipping the alcohol. So in New York, you can ship statewide. The Arnold's Wine case is directly on point, and the court read the Granholm decision in the way that the state reads it here. Likewise, the Texas case also concluded that the three-tier system was unquestionably legitimate. You also have the Eighth Circuit, although on the in-state wholesaler side, reaching the same conclusion. Every circuit court that has looked at this issue has reached the same conclusion. But I guess I still want to push back and say I'm not sure that they've been facing quite this same question where at one of the levels of the three-tier system, the state is drawing a distinction based on the residency or citizenship of the other party and not simply saying you have to get the appropriate license to participate at this tier or that tier of our system. In New York and in Texas, there were in-state presence requirements. It was the exact same situation with respect to the in-state versus out-of-state. Now, counsel says that because, you know, in Illinois you allow common carriers to ship across the state, whereas in New York you have to have a licensed vehicle by the commission, that that makes all the difference. But it doesn't. It's the same exact requirement. It's in-state versus out-of-state. Out-of-state retailers cannot ship to consumers in New York. It does not matter if they have a license or not. That is prohibited, and the court upheld it in Arnold's Wines. Same thing for the Fifth Circuit. No out-of-state retailer can ship from a point outside of Texas to a consumer in Texas, and the court upheld that as well. When you go to the Eighth Circuit, as I discussed earlier, there are very, very strenuous and onerous residency requirements there.  There is a similar system, although ours is not as onerous, as Missouri, and they said you look at Granholm and all of the indications coming out of Granholm is that this type of system is not discriminatory. I would beg to differ and just say it's discrimination that may be inherent, they're saying, in the 21st Amendment. The Second Circuit does see a nondiscrimination principle in Granholm, and they say you have to treat in-state and out-of-state liquor even-handedly. Not clear. I mean, they have the same question about relief that I had. Even if these plaintiffs get a license at the retail level, to me it doesn't answer what's going to happen about the source of supply they can use. They're still the middle tier, so to speak. But if they're doing it one step at a time, or if they're brokers that are licensed in several states, including Illinois, and they're willing to work through those brokers, maybe that's a problem. It's a little early to solve that problem. I will note, though, that Granholm did discuss a reciprocity system and said that that would actually likely be unconstitutional because it would create a low-level trade war among the states. So if you're looking at other regimes that could occur, the reciprocal nature of licenses under Granholm, when it was discussing New York's law, would likely not be constitutional. And likewise, if you're talking about having a licensed Illinois distributor then shipping, say, to an Indiana retailer and back to an Illinois consumer, the court in Arnold's Wines, the Second Circuit case, also addressed that in footnote 3 and said that that would lead to an absurd operational result or would be virtually impossible. So all of these other options have been considered by the courts, and this really is the best way that the states have deemed to solve this problem. Other than completely eliminating the distributor tier and the three-tier system itself, you have to have all retailers being treated the same. If you have a retailer who is able to avoid this three-tier system, then they're getting preferential treatment over the in-state retailers. But that's the argument that your opponents say is a red herring. They say you don't. They're not asking for different treatment. They recognize they've got to pay Illinois-level taxes on things. They recognize if they're, I don't know, let's say there's some limit on the percentage of alcohol that can be in the wine, no more than 14 percent or something like that, no fortified wines. They would have to comply with that. I mean, there are all kinds of requirements. And so I don't think they envision this as anything but get rid of the discriminatory thing but make it the same otherwise. But it couldn't be the same otherwise because you have the licensed distributor aspect of the Illinois system. Well, but you could tell them, buy from a licensed distributor. I don't see where this case is about that. It is about that. Well, I suppose that goes more to the level of scrutiny in terms of whether or not there's a reasonable alternative. And as the court said in footnote 3 in Arnold's Wine, that would not be a reasonable alternative. The state here has made findings that it wants to restrict how much shipment is going directly to consumers in Section 29 of the Liquor Control Act, 6-29. But there's no limit on how much wine an in-state retailer can ship to consumers. You could be getting three cases a day, 365 days a year, if you were a heavy wine consumer. Yes, you could. But that wine has been through the controlled Illinois system. So in other words, it has nothing to do with consumption. It has everything to do with protection of the tax base and also protectionism of Illinois companies. But it really doesn't have anything to do with public health or anything else. It does. The state legislature did make findings with respect to state health. I see that my time is coming to a close. Yeah, if you'd like to summarize. Any further questions? You know, the state asks that this court affirm the judgment of the district court under Granholm that the three-tier system is legitimate and there is no discrimination among retailers. Thank you. All right, thank you very much. Mr. Tanfer, final words? Thank you, Your Honor. Just a few things. First, I just would remind the court that the Second and Fifth Circuit cases involved nondiscriminatory laws. It's not the New York case. In-state wine or in-state retailers had to deliver in their own vehicles. The plaintiff was from Florida in that case and could not deliver in his own vehicle and only asked for the remedy of direction. Using the common carrier. So in the context of the case, it was not a discriminatory case. Now, in several pages of quite strong dictum, the Second Circuit, which I would point out had just been reversed by the Supreme Court in Granholm, reached sort of the same conclusion and took a very strong position that even if it had been discriminatory, they probably would have upheld it. They would have upheld it. They read Granholm narrowly. Yes, but in the Fifth Circuit case, the same. It was not a discriminatory law. Texas retailers were only allowed to deliver within their own local areas. So none of these cases are any direct precedent. And in all of them, what was going on is essentially these arguments by the state that, for example, it needs to inspect wine when it comes to rest at a wholesaler. What do they inspect it for? These are questions of fact that ask, is, in fact, the come to rest at a wholesaler location that justifies the wholesaler requirement, the in-state wholesaler requirement? Could that interest be served? What is the interest? Could it be served by nondiscriminatory? And that's a question of fact. So what's your response to the state's argument that it would actually be quite easy for your client to establish an Illinois presence and solve this problem at a stroke? If this is really such a promising market, why not? Because constitutionally, Granholm says that's not a fair requirement because of the added expense. And because the Commerce Clause particularly addresses a national market, if they have to do that in every single of the 50 states to which they want to distribute, it makes it financially impossible. And the Supreme Court thought that was significant enough to devote a paragraph to it in Granholm. Thank you. Thank you very much. Thanks to both counsel. We'll take the case under advisement.